In re ELLIOTT.

No. 22565.

United States District Court
E. D. Pennsylvania.

April 6, 1948.

772

John M. Smith, Jr., of Philadelphia, Pa., for bankrupt.

Henry Gouley, of Media, Pa., for creditors.

Michael A. Foley, of Philadelphia, Pa., for trustee.

GANEY, District Judge.

The referee in bankruptcy has sustained the objection to the bankrupt's discharge under Section 14, sub. c(4), of the Bankruptcy Act, as amended, 11 U.S.C.A. § 32, sub. c(4). The bankrupt seeks by this petition for review, to set aside that ruling.

The findings made by the referee, from testimony submitted before him, reveal the following: On February 10, 1937, the parents of Margaret C. McCann, a minor, brought suit in a state court against the present bankrupt and another defendant to recover damages for injuries sustained by the minor on March 1, 1935, as the result of the negligent operation of an automobile driven by the bankrupt. On January 27, 1943, verdicts were returned against the bankrupt and the other defendant in favor of the minor for Ten Thousand Dollars ($10,000) and in favor of her parents for One Thousand Five Hundred Dollars ($1,500). Judgments were entered upon these verdicts on February 6, 1943. Sometime in 1937, the bankrupt married Mrs. Moe Mears, then twenty-two years of age, a widow with a son by her former marriage. Prior to her second marriage and up until approximately the year 1939, she was employed two days out of the week by a concern at three dollars a day. She was also employed as a housekeeper for a number of years by her sister at approximately eighteen dollars per week. Prior to 1941 the bankrupt was employed between considerable periods of idleness. In the following years, however, he became steadily employed; his gross earnings for 1942, 1943 and 1944 respectively were $4,783.88, $5,256.46 and $5,160.60. On August 12, 1942, the bankrupt's wife took title to a dwelling house located at 2418 W. Stiles Street, Philadelphia, Pennsylvania, by purchase from a third party and his wife. The consideration for the property was Two Thousand Dollars ($2,000), of which Five Hundred Ninety and 63/100 Dollars ($590.63) [1] was paid by the wife out of her own money, and the remaining Sixteen Hundred Dollars ($1600) by a building and loan association which obtained a mortgage on the property as security, executed by the bankrupt [2] and his wife at the time the latter took title. This mortgage was cleared by payments made between September 7, 1942, and May 9, 1944, inclusive, from the wages of the bankrupt, the last payment being in the sum of Six Hundred Seventy Seven and 89/100 Dollars ($677.89). During the following two years, the bankrupt's gross earnings were Five Thousand Six Hundred Thirty-Three and 02/100 Dollars ($5,633.02) and Three Thousand Nine Hundred Seven and 97/100 Dollars ($3,907.97). Beginning sometime in 1942, the bankrupt's weekly wages were paid by check [3] instead of cash. During the years 1942 to 1945 inclusive, he purchased one hundred thirty one (131) war bonds having a face value of Two Thousand Four Hundred Fifty-Six and 25/100 Dollars ($2,456.25), all of which were made out to him as owner. On January 12, 1946, he filed a voluntary petition in bankruptcy, in which he listed two life insurance policies each having a face value of Five Hundred Dollars ($500), a 1937 Plymouth Sedan, wearing apparel, and Two and 10/100 Dollars ($2.10) in cash as his only

---

[1] From this amount, $190.63 was used to defray the cost of title insurance, conveyancing, fire and war risk insurance, and real estate taxes.

[2] Prior to the Act of May 17, 1945, P.L. 625, Sec. 1, 48 P.S. § 31, a married woman could not mortgage her property without the joinder of her husband. See Act of June 8, 1893, P.L. 344, Sec. 1, 48 P.S. § 31. For apparent exemptions see Alliance Finance Corp. v. Abrams, 1929, 97 Pa.Super. 528; Hersh v. Hersh, 1905, 22 Lanc.Rev. 89.

[3] Starting with May of 1942, all deposits in the bank account under the name of the bankrupt's wife, with the exception of two five dollar items were made by check.

assets. He claims that he never had a bank account or owned real estate. Since August 2, 1942, to the present time, the bankrupt and his wife, with their three children, have resided at 2418 W. Stiles Street.

The specifications of objections to discharge alleged that the bankrupt had concealed or permitted to be concealed his interest in the amount of Sixteen Hundred Dollars ($1600) in the dwelling house within the meaning of Sec. 14, sub. c(4) of the Bankruptcy Act.

The referee has found that the money to pay off the mortgage came from the funds of the bankrupt. We think the evidence could support no other finding. Although, if the matter were before us de nova, we might have reached a different determination with respect to whether the initial cash payment on the property was made from money belonging to the bankrupt's wife, we cannot say that the referee's finding on this point is clearly erroneous. See In re Wolf, 3 Cir., 165 F.2d 707; In re McCann, D.C.E.D.Pa., 1910, 179 F. 575. Our only remaining task is to determine whether the referee properly concluded that the bankrupt had concealed his interest in the property as alleged in the specifications of objections to discharge. Section 14, sub. c(4), of the Bankruptcy Act provides: "The court shall grant the discharge unless satisfied that the bankrupt has * * * (4) at any time subsequent to the first day of the twelve months immediately preceding the filing of the petition in bankruptcy, * * * concealed, or permitted to be * * * concealed, any of his property, with intent to hinder, delay, or defraud his creditors * * *."

Pennsylvania law, which has adopted the Uniform Fraudulent Conveyance Act,[4] places the burden of going forward with the evidence upon the wife, when property belonging to her husband is transferred to her while he is in debt, to show that he was solvent or that she paid a fair consideration for the property. Upon her failure to meet this burden, the transfer is presumed to be fraudulent as to his creditors. American Trust Co. v. Kaufman, 276 Pa. 35, 119 A. 745; Peoples Saving & Dime Bank v. Scott, 303 Pa. 294, 154 A. 489, 79 A.L.R. 129; Iscovitz v. Felderman, 334 Pa. 585, 6 A.2d 270; Ferguson v. Jack, 339 Pa. 166, 14 A.2d 74, Morrison v. Marks, 125 Pa.Super. 177, 189 A. 703. A person who has a claim for damages for personal injuries, even though it is not reduced to verdict or judgment, is a creditor of the defendant within the meaning of the above Uniform Act. McCann v. Oberle, 1944, 33 Del.Co.R. 61; Bartosh et al v. Blosko et al, 1939, 41 Lack.Jur. 201, 202.

At the time the bankrupt's wife took title to the property, a suit for damages was pending against her husband. Although she made the initial payment on the property, it is quite apparent that at that time she could not pay the installments on the mortgage as they became due without the financial assistance of her husband. As was to be expected, his funds were used to that end. Consequently, subject to her equity therein, the bankrupt's wife holds the property[5] upon a constructive trust[6] for his creditors.

The bankrupt contends, however, that the clearing of the mortgage, since it took place more than one year prior to the filing of the petition in bankruptcy, should not operate as a bar to his discharge. We cannot agree. In addition to the continuous use and enjoyment of the property by him since August 12, 1942, his payment of the mortgage was not an open transaction, but a secret one. With respect to the sum used by him to pay off the mortgage, it was

---

[4] Act of May 21, 1921, P.L. 1045, No. 379, Secs. 1 to 13, 39 P.S. §§ 351–363.

[5] In Pennsylvania, homesteads are not beyond the reach of execution creditors. See Act of 1849, P.L. 533, Sec. 1 et seq., as amended, 12 P.S. § 2161 et seq.

[6] "Another common instance of defrauding creditors arises when a debtor purchases property and takes the title in the name of another. If his purpose in so doing is to conceal the property from his creditors, the grantee holds the property upon a constructive trust for the creditors." 3 Scott, Trusts (1939) Sec. 470.

the same, if not worse, than if he had bought property in his own name and then transferred it to his wife subject to a secret trust in his favor. Hence we must hold, as did the referee, that the transfer amounted to a fraudulent concealment of his assets which began August 2, 1942, and continued on, at least, into the year immediately preceding the date on which the petition in bankruptcy was filed. In re Beckman, D.C. W.D.N.Y.1934, 6 F.Supp. 957; In re Winek, D.C.N.J.1941, 39 F.Supp. 3. Also see: In re Wilcox, 2 Cir., 1900, 109 F. 628; Hudson v. Mercantile National Bank, 8 Cir., 1902, 119 F. 346; In re Welch, D.C. S.D.Ohio 1899, 100 F. 65; In re Graves, D.C.M.D.Pa.1911, 189 F. 847; In re Eric, D.C.S.D.N.Y.1938, 25 F.Supp. 211; In re Baxter, D.C.S.D.N.Y.1939, 27 F.Supp. 54; 1 Collier, Bankruptcy (14th Ed. 1940) Sec. 14.51; 7 Remington, Bankruptcy (5th Ed. 1939) Secs. 3238 et seq.; 8 C.J.S., Bankruptcy, § 519(a).

Merely because the trustee in bankruptcy and the creditors had reason to believe from the evidence revealed at the first meeting of the creditors on February 4, 1946, and from which the referee later determined that a fraudulent concealment of the bankrupt's assets had taken place, will not save the bankrupt. A fraudulent concealment of his property by a bankrupt continues until it is discovered by his creditors or by the trustee in bankruptcy. However the discovery does not wipe out the deed of concealment, but merely brings it to an end. A fraudulent concealment which has been brought to light prior to the first day of the twelve months preceding the filing of the petition in bankruptcy may not be set up as a bar to the bankrupt's discharge. But this is not the situation here. The facts leading up to the discovery of the concealment were not learned until after the petition in bankruptcy had been filed. Obviously, a concealment need not be successful to the very end in order to prevent the bankrupt from being discharged of his debts. In re Singer et al., 2 Cir., 1918, 251 F. 51; Huntley v. Snider, 1 Cir., 1937, 88 F.2d 335, 336; In re Quackenbush, D.C.N.D.N.Y.1900, 102 F. 282; In re James, D.C.E.D.N.C.1910, 175 F. 894, affirmed sub nom. James v. Stone, 2 Cir., 181 F. 1021; In re Sussman, D.C.M.D.Pa. 1910, 183 F. 331.

The order made by the referee is affirmed.