In re Leonard GLASER a/k/a Leon Glaser, Debtor.

Sarah GLASER, Plaintiff,

v.

Leonard GLASER a/k/a Leon Glaser, Defendant.

Bankruptcy No. 84 B 20009.
Adv. No. 84 6041.

United States District Court,
S.D. New York.

June 7, 1985.

NJDEP did not brief this issue.

Barr and Faerber, Spring Valley, N.Y., for Leonard Glaser.

Etelson & Fassberg, Spring Valley, N.Y., for Sarah Glaser.

## DECISION ON OBJECTIONS TO DISCHARGE

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The plaintiff, who was the debtor's first wife, filed a complaint objecting to the debtor's discharge under subsections (2)(A), (3) and (5) of 11 U.S.C. § 727(a) and for a determination under 11 U.S.C. § 523(a) that her state court default judgment against the debtor for an equitable distribution in the sum of $17,000 is not dischargeable. The debtor's answer denied the essential allegations in the complaint and asserted two affirmative defenses and two counterclaims for punitive damages and counsel fees for willful and malicious litigation. At the trial, counsel for the plaintiff stated that the proof would be directed to establishing conduct proscribed under subsections (2)(A) and (5) of 11 U.S.C. § 727(a).

### FINDINGS OF FACT

1. On January 12, 1984, the debtor, Leonard Glaser, filed with this court his voluntary petition for relief under Chapter 7 of the Bankruptcy Code.

2. The debtor married his first wife, Sarah Glaser, who is the plaintiff in this case, on March 27, 1953. On January 14, 1981, the plaintiff obtained a default decree from the Superior Court of New Jersey awarding a final judgment of divorce against the debtor. The judgment directed the debtor to pay to the plaintiff the sum of $70.00 per week for her maintenance and support, commencing September 29, 1980, and directed the entry of a judgment against the debtor for equitable distribution in the sum of $17,000. Pursuant to 11 U.S.C. § 523(a)(5), a liability to a former spouse "for alimony to, maintenance for, or support of such spouse ... in connection with a ... divorce decree" is nondischargeable. Hence, the debtor concedes that the

$70.00 per week obligation for the plaintiff's maintenance and support is nondischargeable. Additionally, the $17,000 equitable distribution debt constitutes a property settlement and is not a liability in the nature of alimony, maintenance, or support within the meaning of 11 U.S.C. § 523(a)(5)(B), and is, therefore, dischargeable.

3. On January 31, 1981, the debtor married his present wife, Barbara Green Glaser, who has three children of her own by a previous marriage. He resides with Barbara Green Glaser and her two sons (her daughter does not live at home) in a home which she owns. Barbara Green Glaser is presently employed as a nurse.

4. For many years prior to his petition in bankruptcy the debtor had been engaged in business as a wholesale used car dealer. He worked as a commission salesman for Carib Autos, Inc. and also independently with his son by his former marriage to the plaintiff under the business name of L & G Associates. In September of 1982 the certificate of doing business for L & G Associates was filed with the Rockland County Clerk's office under the names of the debtor's present wife, Barbara Green Glaser, and his step-son, David H. Green. This filing occurred more than one year prior to the filing of the debtor's bankruptcy petition on January 12, 1984.

5. There was testimony that on April 22, 1982, the debtor transferred an Evinrude boat registration in his name to his present wife, Barbara Green Glaser. There was no evidence as to the size or description of the boat or as to its value. In any event this transfer also occurred more than one year before the debtor filed his bankruptcy petition.

6. When the debtor was married to his first wife and resided in New Jersey, he maintained a checking account in the Bergen State Bank. Some time in 1977 the debtor discontinued this account. Since that time the debtor has not maintained any personal bank accounts other than an I.R.A. account with a balance of $2,396.49 as of the date of his bankruptcy petition.

7. The debtor produced his 1983 federal income tax return which he and his wife, Barbara, filed jointly for the tax year immediately preceding his January 14, 1984 Chapter 7 petition. He also produced his 1982 federal income tax return. Schedule W of the 1983 tax return reveals that the debtor had a net income of $18,217.23. The tax return also reflects federal income tax withheld in the sum of $1,777.00 out of an amount due totalling $5,915.00. In as much as no income taxes were withheld from the debtor's commissions, it follows that the $1,777.00 figure relates to Barbara Green Glaser's salary as a nurse. Hence, the difference, or $4,138, represents the debtor's 1983 income tax liability. Subtracting $4,138 from the debtor's net income of $18,217.23, it appears that the debtor had available income for spending in 1983 of $14,079.23. The evidence revealed that the debtor contributed to his wife for household expenses the sum of approximately $200 per week, for a total of $10,400 for 1983. This left the debtor with a net sum of approximately $3,679.23, or approximately $70.75 per week for his own personal living expenses, such as lunches, automobile, gasoline, tolls, entertainment and miscellaneous daily items. There was no proof introduced to show that the debtor saved any earnings or secretly hoarded any unspent funds.

8. The debtor's present wife, Barbara Green Glaser, testified that she maintained a money market account, which consists of her annual bonuses of $1000 per year, for a total of $6000. She also maintains an active checking account that she uses to pay the household expenses. At one time, Barbara Green Glaser's checking account included the debtor as a signatory because, as she testified, she wanted him to have access to it in the event she was incapacitated, because of health reasons at a time when she was "in and out of hospitals." This account was closed in April of 1982, more than one year since the filing of the debtor's bankruptcy petition. Since then she maintained the account solely in her own name.

9. The plaintiff has shown that the debtor's commission checks from Carib Autos, Inc. were cashed by Barbara Green Glaser through her checking account. The debtor and Barbara Green Glaser readily concede this fact because the debtor did not have a checking account of his own. Indeed, Barbara Green Glaser testified that her bank established a rule that it would not cash third party checks. Therefore, she put the proceeds through her checking account. However, it was also established that she did not keep the funds, except for the approximate amount of $200 per week for household expenses that the debtor specifically authorized her to retain. The balance of the proceeds were turned over to the debtor for use in his business and to cover his own personal expenses. Thus, apart from the approximate sum of $70.75 per week for the debtor's personal living expenses, there were no free funds available to be hoarded or concealed by the debtor.

10. The debtor produced his records reflecting automobiles bought and sold. He also maintained the bills of sale reflecting each of the transactions. Barbara Green Glaser produced her bank account statements and boxes containing household records, receipts and bills.

11. There was no proof that the debtor intended to hinder, delay or defraud his creditors by transferring, removing, destroying, mutilating or concealing any of his property within one year before the date of the filing of the bankruptcy petition on January 12, 1984.

12. There was no evidence adduced to show that the debtor failed to explain satisfactorily any loss of assets or deficiency of assets to meet his liabilities.

13. There was no proof, nor did the plaintiff attempt to show, that the debtor concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records and papers from which his financial condition or business transactions might be ascertained, as proscribed under 11 U.S.C. § 727(a)(3).

14. The debtor did not establish that the plaintiff's objection to his discharge was commenced maliciously and primarily interposed for an improper purpose, such as to harass, to cause delay or to increase the cost of litigation.

## DISCUSSION

■ Bankruptcy Rule 4005 provides that at the trial on a complaint objecting to a discharge, the plaintiff has the burden of proof. While the ultimate burden of persuasion rests on the plaintiff creditor who is objecting to the discharge, the debtor must offer evidence after the plaintiff creditor makes out a prima facie case. *Devers v. Bank of Sheridan, Montana (In re Devers)*, 759 F.2d 751, 754 (9th Cir.1985); *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 619 (11th Cir.1984) (per curiam); *First Texas Savings Association, Inc. v. Reed (In re Reed)*, 700 F.2d 986, 992–93 (5th Cir.1983); *First Federated Life Insurance Co. v. Martin (In re Martin)*, 698 F.2d 883, 887 (7th Cir.1983).

The essence of the plaintiff's position is that the debtor turned over to his wife his commission checks received in the course of his business as a used car dealer, which she cashed and then delivered the proceeds to him after withholding approximately $200 per week as authorized by the debtor for the payment of household expenses. The plaintiff contends that this conduct during the one year period immediately preceding the filing of the debtor's Chapter 7 petition constituted a transfer or concealment of assets with intent to hinder, delay, or defraud creditors within the meaning of 11 U.S.C. § 727(a)(2)(A) and a failure to explain satisfactorily a loss of assets or deficiency of assets, as delineated under 11 U.S.C. § 727(a)(5). The debtor did produce his income tax returns, business records and boxes of household bills and receipts with the result that the plaintiff's counsel stated that he was not relying upon 11 U.S.C. § 727(a)(3), which deals with a concealment, destruction or failure to preserve financial records.

■ In considering the issue of a debtor's transfer or concealment of assets with intent to hinder, delay or defraud a creditor, as described in § 727(a)(2)(A), the plaintiff must establish an actual intent to hinder, defraud or delay; constructive fraudulent intent cannot be the basis for denial of discharge. *Devers v. Bank of Sheridan, Montana (In re Devers)*, 759 F.2d at 753; *Bank of Pennsylvania v. Adlman (In re Adlman)*, 541 F.2d 999, 1003 (2d Cir.1976). However, fraudulent intent may be established by circumstantial evidence or by inferences drawn from a course of conduct, because rarely does a debtor admit that he actually intended to defraud creditors. *See In re Freudmann*, 495 F.2d 816 (2d Cir.) (per curiam), *cert. denied*, 419 U.S. 841, 94 S.Ct. 72, 42 L.Ed.2d 69 (1974); *Future Time, Inc. v. Yates*, 26 B.R. 1006 (M.D. Ga.), *aff'd*, 712 F.2d 1417 (11th Cir.1983) (mem.). In considering what constitutes actual fraud the court must be mindful of the axiom that the statute must be construed liberally in favor of debtors and strictly against the objector. *Devers v. Bank of Sheridan, Montana (In re Devers)*, 759 F.2d at 754; *Bank of Pennsylvania v. Adlman (In re Adlman)*, 541 F.2d at 1003.

■ The debtor in this case did not give his wife all of his commissions as a used car dealer for her to keep from the reach of his creditors, as was permitted by the debtor in *Future Time, Inc. v. Yates*, 26 B.R. 1006, which is cited by the plaintiff. Not having a checking account, the debtor's wife cashed the checks for him through her own checking account and returned the funds to him, less approximately $200 per week for household expenses. The remaining cash was used to finance his business operations, as reflected in his business deductions on his income tax returns, including cost of goods sold. The debtor's 1983 net income after income tax payments amounted to $14,079.23. Allowing for the $200 per week retained by the debtor's present wife for household expenses, the debtor had available approximately $70.75 per week for personal living expenses. More important, in *Future Time, Inc. v. Yates*, the debtor commenced the practice of turning all of his salary over to his wife within one year preceding the filing of the bankruptcy petition, during which time he also transferred to his wife a one-half interest in the family residence. The transfer of the debtor's one-half interest in the residence was sufficient to justify a denial of the debtor's discharge in that case under 11 U.S.C. § 727(a)(2)(A). The court stated:

> When appellant transferred his interest in the residence to his wife, he obviously intended to shield what he thought was valuable property from the claims of his creditors. To hold now that there occurred no transfer of property with the intent to hinder creditors merely because the debts on the residence exceed its estimated fair market value would be to reward appellant for his wrongdoing, which the court refuses to do.

26 B.R. at 1009.

In *Semmerling Fence & Supply, Inc. v. Ramos (In re Ramos)*, 8 B.R. 490 (Bkrtcy. W.D.Wis.1981), also cited by the plaintiff, the debtor transferred to his wife substantial sums from his business which were well in excess of the household expenses for which he said they were intended. Unlike the instant case, the debtor brought no records to court and offered no further explanation. However, the debtor's discharge was denied because his schedules and statement of affairs contained numerous false oaths as proscribed under 11 U.S.C. § 727(a)(4)(A), which is not an issue in the instant case.

As in the case of *In re Gugliada*, 20 B.R. 524, 9 B.C.D. 339 (Bkrtcy.S.D.N.Y.1982), it was the debtor's practice for many years to turn over a portion (although not all) of his earnings to his wife for household expenses. Such conduct, without more, does not amount to evidence of extrinsic fraudulent intent to support the denial of a discharge under 11 U.S.C. § 727(a)(2)(A).

■ The plaintiff urges that the debtor has failed to explain satisfactorily the loss of his assets within the meaning of 11 U.S.C. § 727(a)(5) because there is no record of any deposits into a bank account. However, the debtor has explained that he

did not give all of his earnings to his wife for household expenses and that except for the approximate sum of $200 per week, the remainder of his income was used to buy and sell used cars and for related business expenses. The debtor maintained a record of all his automobile purchases and sales, which he brought to court. He also produced his income tax returns which substantiated his business expenses. There was no proof that any funds were concealed from creditors or stayed with him. *See Roberts v. W.P. Ford & Son, Inc. (In re Roberts)*, 169 F.2d 151 (4th Cir.1948); *In re Hale*, 274 F.Supp. 813 (W.D.Va.1967). The debtor's explanation as to the application of the proceeds from his commission checks was reasonable in light of his circumstances and standard of living. *See Fox v. Cohen (In re Cohen)*, 47 B.R. 871, 874 (Bkrtcy.S.D.Fla.1985). The debtor did not refuse to explain how his income was applied, or the circumstances surrounding his receipt of income as in the case of *First Federated Life Insurance Co. v. Martin (In re Martin)*, 698 F.2d 883 (7th Cir.1983), cited by the plaintiff. In that case the debtor received $15,000 from his father and, in the aftermath of a divorce, purchased a condominium with a $15,000 down payment, listing his father as the beneficial title owner. The debtor resided in the condominium, paid all mortgage, maintenance and insurance charges, voted as a condominium owner and deducted the interest payments on his own federal income tax returns. The court found that the debtor made no attempt to explain the transaction in question and presented no evidence after the creditors presented their case-in-chief. The debtor, instead, chose to rely for his defense on the proposition that the creditors had not made out a prima facie case under their complaint. A satisfactory explanation of a loss of assets to meet liabilities within the meaning of 11 U.S.C. § 727(a)(5) "must consist of more than the vague, indefinite, and uncorroborated hodgepodge of financial transactions...." *Baum v. Earl Millikin, Inc.*, 359 F.2d 811, 814 (7th Cir.1966). *Accord Chalik v. Moorefield (In re Chalik)*, 748 F.2d at 619. The debtor, Leonard Glaser, produced his

income tax returns and his business records. His wife, Barbara Green Glaser, testified as to their household expenses, and produced bank statements and boxes of household bills and receipts. Based upon this evidence, it cannot be held that the debtor failed to explain what happened to his annual income as a used car wholesaler.

## ATTORNEYS' FEES

The debtor has counterclaimed for attorneys' fees on the theory that the plaintiff's charges are frivolous and tantamount to willful and malicious litigation. Where a losing litigant has acted vexatiously or in bad faith, federal courts may award attorneys' fees. *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 258–59, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975). Moreover, if willful abuse of process is found, federal courts possess inherent power to assess attorneys' fees against counsel. This authority is found in 28 U.S.C. § 1927. Similarly, Bankruptcy Rule 9011, which tracks Fed.R.Civ.P. 11, provides in pertinent part:

> The signature of an attorney or a party constitutes a certificate by him that he has read the document; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass, to cause delay, or to increase the cost of litigation.... If a document is signed in violation of this rule, the court on motion or on its own initiative, shall impose on the person who signed it, the represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee.

Recently, the Second Circuit, in *Flushing Savings Bank v. New York State Department of Transportation (In re Cosmopoli-*

*tan Aviation Corp.),* 762 F.2d 338 (2d Cir. 1985), awarded double costs and attorneys' fees for a frivolous appeal which was brought for the purpose of delay. In another recent case, *Eastway Construction Corp. v. City of New York,* 762 F.2d 243 (2d Cir.1985), the Second Circuit held that Fed.R.Civ.P. 11, upon which Bankruptcy Rule 9011 is based, did not require a showing of subjective bad faith to trigger the sanctions imposed by the rule. The court held that

> sanctions shall be imposed against an attorney and/or his client when it appears that a pleading has been interposed for any improper purpose, *or where,* after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law.

*Id.,* at 253–54 (footnote omitted).

After reviewing the complaint and the evidence, the court cannot conclude that the plaintiff or its counsel acted unreasonably in objecting to the debtor's discharge. The plaintiff established that the debtor was engaged in business as a used car dealer and salesman and that he received substantial commission checks which he cashed through his wife's checking account rather than maintaining an account of his own. The circumstances warranted the plaintiff requiring the debtor to come forward with an explanation as to his conduct in the receipt and use of these funds. A competent attorney for the plaintiff might be justified in objecting to the debtor's discharge under these circumstances notwithstanding that the plaintiff's objection did not succeed on the merits. Accordingly, the debtor may not be awarded attorneys' fees from the plaintiff.

### CONCLUSIONS OF LAW

1. The plaintiff has failed to sustain her burden of proving that the debtor, with intent to hinder, delay, or defraud creditors, has transferred, removed, destroyed, mutilated or concealed property of the debtor, within one year before the date of the filing of the bankruptcy petition, as proscribed under 11 U.S.C. § 727(a)(2)(A).

2. The plaintiff has failed to sustain her burden of proving that the debtor has failed to explain satisfactorily any loss of assets or deficiency of assets to meet the debtor's liabilities, as proscribed under 11 U.S.C. § 727(a)(5).

3. The complaint objecting to the debtor's discharge shall be dismissed.

4. The debtor has failed to establish his entitlement to attorneys' fees from the plaintiff.

SUBMIT ORDER on notice.