**In re NEW YORK FLUORESCENT LIGHT CO., Inc.**

**No. 41556.**

District Court, E. D. New York.

April 1, 1942.

David Haar, of New York City, for objecting creditors.

Duberstein & Schwartz, of Brooklyn, N. Y. (Max Schwartz, of New York City, of counsel), for bankrupt.

ABRUZZO, District Judge.

The creditors filed twelve specifications of objections to the arrangement proposed by the debtor. One of the objections, numbered 2, was withdrawn. By order of the referee in bankruptcy, eleven objections have been overruled. The objecting creditors now move for an order reversing the order of the referee overruling the eleven specifications to the arrangement proposed by the debtor.

The debtor corporation filed its petition for an arrangement on or about August 29, 1941. It offered fifty (50%) per cent to unsecured creditors, 10% in cash and the balance in periodic payments.

During the course of the proceedings before the referee, an amended plan was filed and this time the debtor offered 20% in cash which was apparently accepted by a majority of the creditors in number and amount.

The specifications of objections were filed on November 18, 1941. Hearings were held on the eleven specifications of objections on December 24, 1941, and December 26, 1941. At the close of these hearings, the referee made his decision overruling the eleven of them. It now remains to be determined whether or not the referee was justified in making his decision.

### Specification 4.

Specification 4 charges that the debtor has not performed its duty as required under Chapter XI, 11 U.S.C.A. § 701 et seq., in that it has not filed a correct or truthful statement of affairs, particularly insofar as item No. 10 and item No. 15 are concerned.

Item No. 10 of the statement of affairs required information as to repayments of loans during the year immediately preceding the filing of the petition. The debtor answered, "Loans repaid as per books". The referee ruled that this answer fulfilled the duty of the debtor as required under Chapter XI.

The objecting creditors contend that the referee was in error as to this finding. They claim that it was the duty of the debtor to answer the question as submitted since it was inserted by Chapter XI to take the place

of an examination under section 21, sub. a, 11 U.S.C.A. § 44, sub. a. The objecting creditors maintain that a creditor is not obligated to go to the books of the debtor to check on loans but rather it is the duty of the bankrupt to give this information. In the instant case, one of the objecting creditors had a place of business in New Jersey and it is argued that it is not the duty of the creditor to travel to Brooklyn to ascertain what loans have been repaid, especially when the books are still in the possession of the debtor.

The debtor, refuting these claims, asserts that the books and records were before the referee and the creditors had ample opportunity to examine same.

The Court is of the opinion that the debtor was duty bound to set out these loans in detail in the statement of affairs.

Item No. 15 required disclosure of the names and addresses of each stockholder of twenty-five (25%) per cent or more of the issued and outstanding stock of the corporation.

The debtor answered that both Louis Schneider and his wife were owners of more than twenty-five (25%) per cent of the stock. However, the debtor claimed a typographical error had been made as to Mary Schneider inasmuch as she was not a stockholder. The referee held that the answer did not materially affect the issue.

The referee unquestionably was justified in holding that the answer did not materially affect the issue, but this matter is pointed out to indicate the careless manner in which the bankrupt gave information.

In passing, the debtor could be apprised of the fact that he is obligated to give complete factual answers. He cannot escape censure because of carelessness. This conclusion is borne out by other indifferent explanations by the debtor, referred to elsewhere in this opinion.

## Specification 5.

Specification 5 states that on information and belief, on or about the 28th day of August, 1941, that being one day before the petition for arrangement was filed herein by the debtor, the debtor transferred, removed, destroyed or concealed, or permitted to be removed, destroyed or concealed, certain property belonging to it with intent to hinder, delay and defraud its creditors, as follows:

(a) Approximately one hundred twenty-five (125) fluorescent light fixtures of the approximate value of over $250.

(b) Certain property, moneys or notes being the proceeds of sale of said property sold by the debtor to Famous Furniture Co., in or about the month of October, 1940, for the sum of $1,845.

(c) Certain cash moneys disposed by the debtor, or its officer, within one year prior to the filing of the petition herein, amounting to the sum of approximately $2,000.

The objecting creditors have eliminated subdivision (a) of this specification since sixty (60) lights have been explained although not to their satisfaction.

Concerning subdivision (b), the objecting creditors claim that the debtor failed to record a sale to the Famous Furniture Co., Inc. in the amount of $1,845. It seems that the books of the latter corporation disclosed a purchase in a like amount. The books were admitted into evidence to be set up for their worth against the statements of the debtor's officer. This was permitted since the referee desired to wind up the hearings and the witness who could testify as to the entry on the books of the Famous Furniture Co., Inc., was not available.

Three notes made by the Famous Furniture Co., Inc., to Louis Schneider individually, dated the same as the book entry, for $125 each, were offered in evidence. These notes were submitted to prove the sale which Schneider, president of the debtor corporation, denied took place. It is clear from these notes that some sort of business transaction took place between the debtor and the Famous Furniture Co., Inc. It was incumbent upon the debtor to have its books in order so that this transaction could be readily ascertained.

Subdivision (c) relates to item No. 14 of the statement of affairs which is being reviewed under specification 11.

## Specification 7.

This specification of objection charges that on information and belief the debtor has failed to keep books of account, or records, from which its financial condition or business transactions might be ascertained.

The objecting creditors oppose the overruling of this specification of objection and refer to the following evidence in support of their contention.

It appears that a contract was entered into between the debtor and the Journal News Corporation, dated May 20, 1941. As a result thereof, fluorescent lights and fixtures were installed in the premises of the Jewish Morning Journal, a subsidiary of the Journal News Corporation, at 77 Bowery, New York City. One half of the amount due, two thousand forty and 50/100 ($2040.-50) dollars, was to be paid in cash, and the other half to be offset by advertising on the part of the debtor.

The original agreement was retained by the Journal News Corporation. The copy as delivered to Schneider. This contract was assigned to Jack A. Korn and others on May 28, 1941 (Exhibit #8) at the bottom of which is stated:

"The party of the first part (meaning the debtor) further warrants and represents that there is due the sum of $2040.50 without any offset and counterclaims whatsoever."

Exhibit 9, the copy of the contract assigned, reveals that paragraph 7 is stricken out and to paragraph 8 is added "Evidenced by twelve notes" which does not appear in the original.

Korn testified that he gave a check for $900 as part of $1,000 loan on this assignment. Korn made the loan on the basis of the contract being worth $2,040.50 when in reality it was worth only $1,200 in cash, the offset having been stricken out of the copy.

It develops that the Journal News Corporation paid its obligation of $1,200 by issuing twelve notes which have been paid. Schneider discounted them at the United National Bank to secure a $900 loan. It would thus appear that Schneider secured two loans on the strength of the same collateral.

This was a unique transaction, to say the least. There is no doubt that the debtor's books were being juggled to effect the maximum number of loans on the one contract. Assuredly, Korn was not aware of the bank transaction; and vice versa, the bank could not have been informed of the Korn loan. An examination of the books and records of the debtor did not reflect the machinations indulged in by the debtor to secure these loans. This lack of keeping accurate records hardly meets the test of a bankrupt's duty to keep books and records from which his financial condition and business transactions could be readily ascertained.

## Specification 8.

Specification 8 states on information and belief, the debtor destroyed, mutilated and falsified its books of account and records, from which its financial condition and business transactions might be ascertained, in that among other things, it destroyed part of its records in the ledger account of Louis Schneider, its principal officer and sole stockholder indicating withdrawals of money which were marked "confidential". It made entries of withdrawals of money which were marked for "Entertainment" and without any explanation therefor. It made entries of withdrawals of salaries by Louis Schneider, when no such salaries were withdrawn.

The objecting creditors maintain that this specification should have been sustained.

In support of this contention, they point out that the general ledger (Exhibit 1) contained an account in the name of Louis Schneider, on the left hand side of which various items of withdrawals marked "confidential" are indicated. Other withdrawals are marked "Entertainment." It is claimed that Schneider gave no explanation of these items. The bookkeeper of the debtor testified at the hearing and picked out various $5 and $10 items (page 170 of S. M.) which roughly totalled $2,700 which she believed to be for "Entertainment", based on the information she received from Schneider. The bookkeeper testified she could give no meaning to the word "Confidential" (page 177 of S. M.). At page 115 of the stenographer's minutes is found testimony relative to cash withdrawals. A specific question follows:

"Q. Can I find out by looking through all of the books that are now in evidence or any other books that you may have in your place, what happened to that cash, the $325? A. No." (page 116 of S. M.)

A similar question to other transactions received the same answer. No explanation was given on the stubs of check books for cash withdrawals. Evidently, the books carried only general entries of these cash withdrawals.

Many sales and contracts were made on payment of notes and upon questioning, the bookkeeper stated she kept no record of notes (page 136 of S. M.). She asserted that all of these items would be found in the cash book.

This specification is correlated to specification of objection, numbered 11. No

one could know the true financial condition and business transactions of this debtor without lengthy and arduous explanations. Certainly, such a system of bookkeeping is far from that required by law. It is no wonder that the bankrupt answered, "None", as to outstanding loans if he relied upon the books for his information. The Court can now perceive the basis for specifications of objections, numbered 8 and 11. No credence can be placed in the explanations given to elucidate the books of accounts and records of this debtor.

## Specification 9.

Specification 9 charges that the debtor did not keep records of numerous transactions with one Wynack, from whom allegedly it borrowed money of which no complete record has been kept in its books. Nor did it keep records of its transactions with one Soffer, one Katzman, one Rose and one Korn, with whom it had financial transactions and which financial transactions are not set forth in full in the books.

The objecting creditors maintain that this specification should have been sustained.

It has been shown from the testimony that the debtor borrowed money from Wynick, Katzman, Soffer and Korn, but the objecting creditors point out that no record of these loans can be found in the debtor's books. The bookkeeper claimed that these items were in the cash book, but the objecting creditors assert that they are not obligated to wade through a cash book to find notes payable and receivable.

It is apparent that the only person who could explain these transactions was the bookkeeper. The objecting creditors could not possibly discover the existence of these loans from the books themselves. Such records as these do not meet the requirements to be met by the Bankruptcy Act.

## Specification 10.

This specification asserts that the debtor did not keep any record of any notes given to its customers for the sale of merchandise, or of notes made by it to others for loans from which its financial condition could be ascertained with respect to such notes.

There is an interrelation between this specification of objection and specification 9. Therefore, the same analysis and conclusion reached in reference to specification 9 are applicable to the tenth specification.

## Specification 11.

Specification 11 states that the debtor committed an intentional false oath in this proceeding, in that, in response to item No. 14 of the statement of affairs, he answered, "None", to the question of personal withdrawals, including loans, when as a matter of fact, the debtor through its president knew that he, the said president, had withdrawn a substantial sum of money from the debtor corporation.

It is the contention of the objecting creditors that the answer, "None", was false. Schneider had withdrawn over $5,000 within the year preceding the filing of the petition (page 178 of S. M.). It was shown that he had withdrawn $4,299.14, of which $3,299.14 was for salary and $1,000 for "Entertainment" (page 178 of S. M.). At page 180 of the stenographer's minutes, it was disclosed that he withdrew $2,052.67 for his personal account to safeguard his personal responsibility on his guarantee of five (5%) per cent to the United Loan Industrial Bank.

The debtor states that these monies did not constitute withdrawals but rather payment of salary and reimbursement for expenses, also claiming that the money used to build up a reserve in the United Loan Industrial Bank was never received by Schneider.

The objecting creditors maintain that the referee erred in overruling this specification of objection.

There might be some ground for the overruling part of this specification which refers to withdrawals constituting salary. However, it would have been the been practice for the debtor to set out just what its principal officer, Schneider, received in salary. Nevertheless, the referee cannot be sustained insofar as the items referring to the withdrawals for personal guarantee to the bank and entertainment are concerned. The answer, "None", to item No. 14 in the statement of affairs was a long way from the truth.

Chapter XI of the Bankruptcy Act, 11 U. S.C.A. § 701 et seq., prescribes the duties incumbent upon the debtor in order to be entitled to a confirmation of its arrangement. It states:

"Section 366 [§ 766]. The court shall confirm an arrangement if satisfied that * * *

"(4) the debtor has not been guilty of any of the acts or failed to perform any of

the duties which would be a bar to the discharge of a bankrupt."

An interpretation of these duties is found in the case of In re Underhill, 2 Cir., 82 F. 2d 258, 260:

"Where the bankrupt was involved in many transactions of an extensive character, a substantially accurate and complete record of his affairs is a prerequisite to his discharge.

\* \* \* \* \* \*

"Complete disclosure is in every case a condition precedent to the granting of the discharge, and if such a disclosure is not possible without the keeping of books or records, then the absence of such amounts to that failure to which the act applies."

In Karger v. Sandler, 2 Cir., 62 F.2d 80, it was held that the burden of explaining the failure to keep books and records from which the financial condition and business transactions of the debtor could be ascertained is upon the debtor and not upon the creditor.

In re Becker, D.C., 106 F. 54, 56, the Court said: "A discharge is intended to relieve misfortune, but it must be misfortune coupled with absolute honesty. It is the reward which the law grants to the bankrupt who brings his entire property into court and lays it, without reservation, at the feet of his creditors."

That the burden of proving his honesty and right to discharge or confirmation of arrangement shifts to the debtor is clear from Federal Provision Co. v. Ershowsky, 2 Cir., 94 F.2d 574, 575, which states: "The amendment of 1926 has revolutionized the procedure in discharge; the bankrupt may no longer remain inert, standing upon the infirmities of the evidence against him; once a prima facie case appears, the laboring oar passes to his hands and he must bring the boat to shore. It is he who has caused the loss, who has access to the facts, and who alone knows what the explanation is; let him make it, let him satisfy the court that it really explains."

There is no question that the Bankruptcy Act intended that the debtor make a complete disclosure of the many transactions of an extensive character and keep a substantially accurate record of its business as a prerequisite to his discharge or confirmation of its arrangement. The failure to keep books of account and records from which the debtor's financial condition and business transactions could be readily ascertained bars a discharge or confirmation of an arrangement.

Specifications of objections, numbered 4, 5, 7, 8, 9, 10 and 11 were overruled by the referee, but he was in error in not sustaining them. Therefore, the part of the order of the referee which overrules these specifications is reversed.

Specification 2 having been withdrawn has not been considered in this decision.

The order of the referee pertaining to specifications of objections, numbered 1, 3, 6, and 12 is sustained.

Submit order on two (2) days' notice in accordance with this opinion.