In the Matter of Ralph MOLDEN, Bankrupt.

W. O. LUCAS, Appellant,

v.

Ralph MOLDEN, Appellee.

No. 13501.

United States Court of Appeals Seventh Circuit.

March 15, 1962.

Daniel A. Gallagher, Chicago, Ill., for appellant.

Carroll A. Teller, Chicago, Ill., Teller, Levit & Silvertrust, Chicago, Ill., for appellee.

Before KNOCH, CASTLE and SWYGERT, Circuit Judges.

KNOCH, Circuit Judge.

W. O. Lucas, creditor-appellant (the sole creditor scheduled in the liabilities of Ralph Molden, debtor-appellee), filed specification of objections to Dr. Molden's discharge in bankruptcy. Upon review, the District Court affirmed the Referee's order dismissing objections to the bankrupt's discharge. Mr. Lucas then appealed to this Court.

6

In his Amended Specification of Objection to Discharge, Mr. Lucas charged that Dr. Molden failed to schedule an alleged interest in real estate, Dr. Molden's residence, which he had transferred to his wife allegedly in fraud of his creditor, Mr. Lucas. The Amended Specification asserts that:

"3. Petitioner in bankruptcy's failure to list the said property is a concealment within section fourteen of the Bankruptcy Act which would justify a denial of discharge in Bankruptcy."

In his Certificate on Petition to Review his order dismissing the objections to the bankrupt's discharge, the Referee stated:

"From the evidence I find that on May 27, 1943, one Bessie Sefcik conveyed by Warranty Deed to Ralph Molden the bankrupt and Evelyn Molden his wife in joint tenancy, the residence which has since that time been occupied by bankrupt and his wife as their home. Said deed was promptly recorded. That the bankrupt's wife Evelyn had accumulated considerable money from her earnings as an instructor in piano and had received a substantial bequest from the estate of her mother; that she paid the total cash consideration involved in the conveyance and signed with her husband a mortgage in the amount of $8,400.00 which represented the balance of the purchase price; that she paid all the expenses of the transfer and since the date of transfer has paid all taxes and other expenses of the upkeep of said property and has from her own funds paid off the mortgage thereon. I further find that the title to said property was put in the joint names of the bankrupt and his wife because of the insistence of the company loaning the money upon the mortgage, which refused to make the loan unless the bankrupt was one of the grantees. I further find that from time to time said Evelyn Molden loaned money to the bankrupt to enable him to make certain invest-

ments in oil lands or oil leases with W. O. Lucas the creditor."

The Referee also found that on November 20, 1949, Dr. Molden borrowed $3,000 from Mr. Lucas in connection with a transaction involving oil leases, for which Dr. Molden gave Mr. Lucas a judgment note, payable 30 days after date. Only $300 was paid on that note. On August 11, 1950, Mr. Lucas confessed judgment on that note in the Circuit Court of Cook County, Illinois. He filed no claim in the bankruptcy proceedings.

On May 4, 1950, Dr. Molden quitclaimed his interest in their residence property to Mrs. Molden in consideration of her surrender of his promissory notes:

| Date | Amount | Payable |
|---|---|---|
| Sept. 26, 1949 | $1312.50 | 90 days after date |
| July 26, 1949 | 3000.00 | 90 " " " |

Both notes and the Quit-Claim Deed were introduced as exhibits. The Quit-Claim Deed bears revenue stamps in the amount of $4.95 which is consistent with the consideration allegedly given for it. It was recorded May 17, 1950.

Mr. Lucas asserts that he is proceeding under the Bankruptcy Act, § 14, sub. c(4), 11 U.S.C.A. § 32, sub. c(4), which reads:

"The court shall grant the discharge unless satisfied that the bankrupt has: * * *

"(4) at any time subsequent to the first day of the twelve months immediately preceding the filing of the petition in bankruptcy, transferred, removed, destroyed, or concealed, or permitted to be removed, destroyed, or concealed, any of his property, with intent to hinder, delay, or defraud his creditors; * * *."

As the Quit-Claim Deed was executed and recorded almost ten years prior to the institution of this action, the Referee assumed that Mr. Lucas must be proceeding under § 14, sub. c(1):

"The court shall grant the discharge unless satisfied that the bankrupt has (1) committed an offense punishable by imprisonment as pro-

vided under section 152 of Title 18;
* * *."

The Referee specifically found that the transfer had not been fraudulently made.

It is Mr. Lucas' position that Dr. Molden's execution of the Quit-Claim Deed in 1950 constituted a continuing concealment of his interest in the real estate; that he transferred that interest without consideration (although the Referee found specifically that the transfer had been made "for ample consideration" and had been promptly recorded) in order to hinder, delay or defraud his sole creditor who has been seeking for these ten years to collect on his note. Mr. Lucas characterizes Mrs. Molden's testimony respecting her purchase of the realty as incredible. He argues that it was not corroborated by cancelled checks, probate or bank records or the testimony of any disinterested persons. He points out that Dr. Molden did not testify respecting the alleged loans for which he executed the promissory notes which Mrs. Molden surrendered to him.

The best judge of Mrs. Molden's credibility was the Referee before whom she testified. She was called and examined on behalf of Mr. Lucas as an adverse witness. Those matters of which he now complains could have been pursued in the course of her examination before the Referee. Dr. Molden could also have been called as an adverse witness. Mr. Lucas takes the view that he established reasonable grounds for believing that the bankrupt did commit an act which would prevent discharge, and that the burden then shifted to the bankrupt to prove, as a matter of fact, that he had not committed the act in question. We cannot agree, on this record, that Mr. Lucas had established such a prima facie case as to shift the burden of proof.

Mr. Lucas testified that when Dr. Molden executed the Lucas note for $3,000 in 1949, he told Mr. Lucas that he owned the property in question and that he could raise $27,000 on it; that in the spring of 1950, Mr. Lucas reminded Dr. Molden of that conversation in connection with the past due note; and that such interest as Dr. Molden had in the property was shortly thereafter transferred to Mrs. Molden.

In Duggins v. Heffron, 9 Cir., 1942, 128 F.2d 546, on which Mr. Lucas relies, the Referee expressly found that the conveyance to the wife was made without consideration. A contrary finding was made here and there was substantial evidence to support it.

Luther Swanstrom, an attorney, testified to the transaction, in his office, wherein Dr. Molden quit-claimed his interest in the property to Mrs. Molden. He testified that the consideration for the transfer was the delivery to him of the two promissory notes described above which he in turn delivered to Dr. Molden.

Appellant also cites Hockett v. Bailey, 1877, 86 Ill. 74, to support his theory that Mrs. Molden was estopped to interpose her claim, on the promissory notes, in opposition to Mr. Lucas' judgment. Hockett involved a bill of interpleader filed by one Youngman against Josiah Bailey and the Hocketts. Mr. Bailey filed a cross-bill. Mr. Youngman had bought a piece of land from Mr. Hockett on which $700 of the purchase price was still unpaid. Mr. Hockett had been indebted to Mr. Bailey on a note for some $500. Mr. Bailey had sued out an attachment and caused it to be levied on the land in question. Hearing of the sale to Mr. Youngman, he garnisheed Mr. Youngman. The Hocketts asserted that Mr. Hockett had no interest in the money or the land. The land had been deeded to Mrs. Hockett by one Antrim in consideration of conveyance to Antrim of another tract owned in the name of Mr. Hockett. The Hocketts sought to prove that property was Mrs. Hockett's because the initial investment in 1858 had come from her inheritance from her father's estate. A series of farms were bought and sold, almost always in Mr. Hockett's name, over a period of ten years. One parcel of land was conveyed to Mrs. Hockett, but it was still treated as though it were Mr. Hockett's alone, and he sold it for other property to which the title was

taken in his name. The Court in the Hockett case decreed payment of Mr. Hockett's debt to Mr. Bailey out of the money deposited by Mr. Youngman.

Appellant draws an analogy between the Hockett case and the case before us. He says that Mrs. Molden allowed Dr. Molden to trade on the credit of her property; knew he was engaging in business with Mr. Lucas, and made Dr. Molden in effect her agent to do such business by lending him the necessary funds; that Dr. Molden is still using the premises as his home; and, therefore, Mrs. Molden is estopped to assert a claim. But Mrs. Molden is not asserting any claim here. She has surrendered the notes which she held in return for the Quit-Claim Deed.

At the hearing, the Referee said:

"The only evidence on the title was the evidence of Mrs. Molden. She testified that she bought the property with money she obtained from her mother's estate, and that the bankrupt had never contributed anything to the upkeep of the property.

"As against that, all we have is the statement of Mr. Lucas that he was informed by the bankrupt, when he made this loan to him, that he had an interest in or owned certain real estate.

"I think the only conclusion I could reach from that testimony was that obviously Dr. Molden made a false statement at that time, but not as to the property at this time. There is no evidence whatsoever here, except Mr. Lucas' statement, that the bankrupt ever claimed any interest in the property."

Appellant contends, nevertheless, that the Referee must have concluded that a prima facie case had been made out because he allowed the bankrupt to proceed to put on witnesses, and that it was inconsistent for the Referee to conclude at the end of all the testimony that a prima facie case had not been made out by Mr. Lucas. The Referee actually said:

"I might be a little premature in determining the weight of the testimony as between those two, [evidently Mrs. Molden and Mr. Lucas] but I will proceed to temporarily overrule your motion—the [bankrupt's] motion to strike, and you may proceed with the bankrupt's case."

The bankrupt directs our attention to In re Doody, 7 Cir., 1937, 92 F.2d 653, which concerned transfer of title by an insolvent debtor. The referee there found that the debtor executed a deed, without any consideration to a servant of his attorney. That deed was recorded. The servant then executed a deed to the same property to the debtor's wife and daughter. That deed was not recorded. The property was not listed in the bankrupt's schedules. Objections to discharge of the bankrupt debtor were dismissed. On appeal, it was argued that the District Court should have found that the debtor had an interest in the property when he filed his petition which he concealed with intent to hinder, delay or defraud his creditor. Although the transfer occurred more than twelve months prior to the filing of the petition in bankruptcy, it was described as a continuing concealment. As in the case before us, the Referee did not find a fraudulent intent, and did not find concealment. This Court found no error in the District Court's holding that fraudulent concealment was not proved.

■ Appellant argues that, unlike the Doody case, there is a secret trust in the instant case because Dr. Molden is still living in the premises he conveyed to Mrs. Molden. We cannot agree that in these circumstances a secret trust has been shown to exist.

We have given careful consideration to all other points and authorities to which appellant referred in his briefs and his oral argument, but find no basis for modifying our conclusion that the ruling of the District Court must be affirmed.