In re Jerry L. HOOPER, Linda J. Hooper, Debtors.

Robert E. PATTON, Jr., et al., Plaintiffs,

v.

Jerry L. HOOPER, et al., Defendants.

Adv. No. 82–0917.

Bankruptcy No. 82–00952.

United States Bankruptcy Court, N.D. Ohio W.D.

March 30, 1984.

---

Keith A. Kochheiser, Marion, Ohio, for plaintiffs.

Dean R. Washburn, Marion, Ohio, for defendants.

## MEMORANDUM OPINION AND ORDER

WALTER J. KRASNIEWSKI, Bankruptcy Judge.

This matter came on for trial on Plaintiffs' complaint to deny the Debtors a discharge pursuant to § 727 of the Bankruptcy Code. At the conclusion of Plaintiffs' case, Defendants moved for involuntary dismissal pursuant to Rule 41(b) Fed.R. Civ.P. and the Court rendered judgment for Defendants. The following opinion constitutes findings of fact and conclusions of law pursuant to Rule 52(a) Fed.R.Civ.P.

### FACTUAL BACKGROUND

Plaintiffs, Robert E. Patton, Jr. and Bob Patton, Inc., are the holders of unsecured claims against the Debtors, Jerry L. Hooper and Linda J. Hooper. The claims arose

as a result of Debtors' association with Plaintiffs in a real estate brokerage owned and operated by Plaintiffs since about 1975.

During the course of their business relationship, Plaintiffs were the developers of a real estate project in Marion County, Ohio. Debtors, and Jerry L. Hooper (hereinafter "Hooper") in particular, bought lots from Plaintiffs in the development and, in return therefor, executed unsecured notes to Plaintiffs. According to the testimony of Robert E. Patton, Jr. (hereinafter "Patton"), after Hooper built a house on a certain lot and the house and lot were sold to a third party, Hooper was to pay Patton on the note relating to that transaction from the proceeds of the sale.

Sometime in mid 1980 Patton discovered that Hooper was selling homes and failing to pay off the notes pursuant to their agreement. Patton sued Hooper on certain of the notes, won judgments, and the judgments were subsequently satisfied. One such note dated September 8, 1978, in the amount of $13,300, plus interest at 9% per annum, remains unsatisfied although the realty has been sold.

On August 26, 1980 Debtors transferred title to three parcels of real estate to their son. Also, in December of 1980 and January of 1981, Debtors transferred Corvette automobiles to their son and daughter respectively. Debtors received no monetary consideration for these transfers and, in addition, remain in possession of one parcel of real estate used as their personal residence.

On April 30, 1982, Debtors filed a voluntary joint petition under Chapter 7 of the Bankruptcy Code. On Debtors' schedules, they have listed the obligation owed to Patton on the note of September 8, 1978, as a disputed unsecured claim in the amount of $17,000.00 plus interest. Also, Debtors listed Robert and Judy Rankin as having a disputed unsecured claim for $15,000.00 plus interest for the purchase of certain Pella windows from Debtors. As an asset, Debtors listed a gold band ring among their personal property and valued it at $2,000.00.

## DISCUSSION

■ Plaintiffs' first ground for objecting to the discharge of the debtors is that the debtors have transferred property in contravention of § 727(a)(2)(A) of the Code. This section provides that the court shall grant the debtor a discharge unless

the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition ...

11 U.S.C. § 727(a)(2)(A).

In order to sustain a claim under § 727(a)(2)(A), a creditor must prove the following elements:

(1) that the act complained of was done at a time subsequent to one year before the date of the filing of the petition;

(2) with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under the Bankruptcy Code;

(3) that the act was that of the debtor or his duly authorized agent;

(4) that the act consisted of transferring, removing, destroying or concealing any of the debtor's property, or permitting any of these acts to be done. (footnote omitted)

4 *Collier on Bankruptcy*, ¶ 727.02[1][b] at 727–10 (15th ed. 1983). *Accord, First National Bank & Trust Co. v. Reed (In re Reed)*, 18 B.R. 462 (Bkrtcy.E.D.Tenn.1982). *See Also, City National Bank v. Bateman (In re Bateman)*, 646 F.2d 1220, 7 B.C.D. 760 (8th Cir.1981) (Detailing nearly identical elements under section 14c(4) of The Bankruptcy Act from which § 727(a)(2)(A) is derived). Furthermore, under Bankruptcy Rule 4005, plaintiff has the burden of

proving the facts essential to an objection to discharge of the debtor. "Insufficient or nonexistent evidence cannot carry the burden of proof contemplated ...". *First National Bank v. Peterson (In re Peterson)*, 2 B.R. 402, 403 (S.D.Ga.1980) (construing former Rule 407). If the proof is insufficient on any one of these essential elements, the objection to discharge cannot be sustained. *See In re Bateman, supra*, 646 F.2d at 1222, 7 B.C.D. at 762.

At the trial on the present matter, the Court granted defendants' motion for involuntary dismissal under Rule 41(b) Fed.F. Civ.P., applicable in adversary proceedings in bankruptcy under Bankruptcy Rule 7041, since plaintiffs had failed to prove either that the transfers in issue occurred within the 12 month period stated in § 727(a)(2)(A) or that there was a continuing concealment sufficient to bring the transfers within the exception to discharge.

█ Each of the transfers of real or personal property that occurred in this case occurred outside the "one year before the date of the filing of the petition" posited under § 727(a)(2)(A) and, thus, none of the transfers in issue are within the scope of the express terms of this ground for objection to discharge. It is well established, however, both under § 14c(4) of the Bankruptcy Act and under § 727(a)(2)(A) of the Code, that a transfer by the debtor of legal title to the property while maintaining an equitable interest in the property, under certain circumstances, can constitute a "continuing concealment" sufficient to bring the transfer within the statutory period. *See, e.g. Sacklow v. Vecchione (In re Vecchione)*, 407 F.Supp. 609 (E.D.N.Y. 1976); *Wisconsin Finance Corp. v. Ries (In re Ries)*, 22 B.R. 343 (Bkrtcy.W.D.Wis. 1982); *Ohio Citizens Trust Co. v. Smith (In re Smith)*, 11 B.R. 20 (Bkrtcy.N.D.Ohio 1981). The critical factor in this Court's decision to dismiss this ground for objection to the debtors' discharge, thus, is the finding that the proof was insufficient to show that debtors maintained an equitable interest in the property subsequent to transferring it to their son and daughter.

█ With respect to two of the parcels of real estate and the two Corvette automobiles specified in plaintiffs' complaint, there was no evidence produced at trial of the debtors' retention of any interest in or control over the property. The transfers, thus, must be considered absolute and, even if they defraud creditors, cannot sustain an objection to the discharge of the debtors. *See, In re Vecchione, supra*, 407 F.Supp. at 614; *In re Ries, supra*, 22 B.R. at 345; *In re Smith, supra*, 11 B.R. at 22. One of the transfers, however, involved the debtors conveying their interest in certain real property to their son and their continuing to maintain their residence on the subject property up to and continuing beyond the date of the filing of the petition. The issue then is whether, under these circumstances, the plaintiffs have proven a sufficient retention of an equitable interest in the property by the debtors to bring the transfer within the statutory period. The Court holds that the bare proof of debtors continuing to live on the property that they transferred to their son, without more, is insufficient to constitute a "continuing concealment" to bring the transfer within the one year period specified in § 727(a)(2)(A).

In this regard, it is instructive to look at *In re Vecchione, supra*, relied upon by plaintiffs for establishing the theory of continuing concealment. In *Vecchione* the district court rejected the bankruptcy court's holding, based upon *Lucas v. Molden (In re Molden)*, 300 F.2d 5 (7th Cir. 1962), that the bankrupts' continuing to live in their house transferred to their wives did not constitute a fraudulent concealment:

> Finally, *In re Molden, supra*, relied on by the bankrupt for the proposition that a secret trust is not established by virtue of the bankrupts continuing to live in the houses after the transfer, is inapposite. In *Molden, supra*, the bankrupt had quit-claimed to his wife his interest in jointly owned property in consideration for her surrendering two of his promissory notes. The objecting creditor there argued that since the bankrupt continued to reside on the conveyed premises, a

secret trust should be held to exist. In rejecting that argument, the Court of Appeals stated, 'We cannot agree that in these circumstances, a secret trust has been shown to exist.' 300 F.2d at 8. The circumstances undoubtedly alluded to were that it was the bankrupt's wife who not only made the total cash down-payment for the house but also paid the mortgage, taxes and all other expenses out of funds either earned or inherited by here. *Here, all expenses relating to the houses were paid both before and after the conveyances out of money earned by the bankrupts.* (emphasis added) 407 F.Supp. at 617. Thus, the critical factor identified in *Vecchione* was evidence that while the bankrupt had transferred the property in question, certain circumstances surrounding the transfer, such as his continuing payment of taxes, mortgage, and insurance payments, for instance, indicated that he continued to use the property as his own.

In a similar case, in *Friedell v. Kaufman (In re Kauffman)*, 675 F.2d 127 (1981), the United States Court of Appeals for the Seventh Circuit rejected the bankrupt's [Kauffman's] contention that he retained no beneficial interest in the subject property:

> Kaufman also claims he retained no beneficial interest in the property. His assertion is belied by the evidence. Kauffman took out several personal loans using the house as collateral. He lived in the house and continued to make mortgage, tax, and insurance escrow payments on the house. Further, the property was listed as one of his assets on personal financial statements. The evidence was sufficient to show he retained a beneficial interest in the property into the statutory period. *In re Cadarette*, 601 F.2d 648, 651 (2d Cir.1979).

675 F.2d at 128. *See also, First Federated Life Insurance Co. v. Martin (In re Martin)*, 698 F.2d 883 (7th Cir.1983).

Thus, in both *Vecchione* and *Kauffman*, the circumstances attending the transfer of the debtors' property indicating that they had continued to use the property in question as their own were held to constitute a concealment or retention of a beneficial interest in the property. With the exception of the fact that debtors continued to live on one of the properties they transferred to their son, plaintiff has adduced no evidence of debtors retention of any beneficial interest in the property transferred. This bare evidence, however, should not be so construed as to establish a continuing concealment of property sufficient to bring the transfers within the statutory period.

The Court need not speculate on how the debtors might explain their continuing to live in the subject property. Certain circumstances, however, could be hypothesized in which the debtors, while maintaining an interest in the property or its proceeds, would not be held to have effected a concealment of a beneficial interest in the property. In *In re Fragetti*, 24 B.R. 392, 9 B.C.D. 1038 (Bkrtcy.S.D.N.Y.1982), for instance, debtors sold their home and transferred the net proceeds to their daughter and son-in-law who used the money, together with their own funds, to purchase a new home. "The debtors' assets at the time were sparse and they concededly owed money to various creditors. The debtors moved into a separate apartment in the new home with the understanding that their daughter would care for Madeline Fragetti, who was paralyzed as a result of a stroke." 24 B.R. at 396, 9 B.C.D. at 1040–1041. As the court in *Fragetti* explained, however, while debtors lived in the new house purchased with the proceeds of the old one, they were not, under the circumstances of that case, held to have concealed an equitable interest in the property:

> In this case, the debtors gave approximately $50,000 to their daughter and son-in-law who purchased a home jointly in their own names and who paid the mortgage and other carrying charges. In the event that the debtors' daughter predeceased them, the property would go to the son-in-law as the joint owner, not to the debtors. Moreover, the debtors

did not hold themselves out as owners of the new home; they paid rent of $300 per month as tenants occupying a separate apartment. That the debtors' daughter acquired part of the money to purchase the new home from the debtors under circumstances that might have amounted to a constructive fraud under 11 U.S.C. S548(a)(2), where actual fraudulent intent is not required, does not mean that a concealment of an equitable interest is established.

24 B.R. at 396, 9 B.C.D. at 1041.

In conclusion, then, with regard to plaintiffs' claim under § 727(a)(2)(A), the court holds that plaintiffs' have failed to prove an essential element of their case, the debtors' retention of a beneficial interest in the property sufficient to bring the transfer within the period stated, and involuntary dismissal is appropriate.

■ As further grounds for objection to debtors' discharge, plaintiffs assert a claim under § 727(a)(4)(A) and (B) of the Code. These sections provide that the court shall grant the debtor a discharge unless

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account;

(B) presented or used a false claim;

11 U.S.C. § 727(a)(4)(A) and (B).

In *Field v. Irving (In re Irving)*, 27 B.R. 943 (Bkrtcy.E.D.N.Y.1983), the court reviewed the nature and elements of a claim under § 724(a)(4)(A):

Section 727(a)(4)(A) provides that a debtor may be denied a discharge if he knowingly and fraudulently made a false oath or account in or in connection with his case. This ground is also a bankruptcy crime as found in 18 U.S.C. § 152 which also provides a ground for the denial of a discharge in the pre-Code § 14(c)(1) of the Bankruptcy Act. Scienter and fraudulent, willful intent are necessary elements which must be proven by the objecting creditor. *Matter v. Taub*, 98 F.2d 81 (2d Cir.1938); *In re Martinez*, 22 B.R. 419 (Bkrtcy.D.N.M.1982). The statement must contain matters which the debtor

knew to be false. The debtor must have known that the statements were false and were made willfully with intent to defraud. *Tancer v. Wales*, 156 F.2d 627 (2d Cir.1946); *In re Steinberg*, 4 B.R. 593, 2 C.B.C.2d 421 (Bkrtcy.D.Mass. 1980). The false oath must have related to a material matter. *Matter of Lozito*, 113 F.2d 764 (2d Cir.1940); *In re Nazarian*, 18 B.R. 143 (Bkrtcy.D.Md.1982). A trivial matter which has but little effect upon the estate and the creditors is treated as immaterial. *In re Bergman*, 6 F.Supp. 898 (D.C.N.Y.1933); *In re Cohen*, 20 F.Supp. 298 (D.C.N.Y.1937); *Matter of Vogel*, 16 B.R. 546 (Bkrtcy.S. D.Fla.1981).

The false oath may consist of a false statement or omission in the debtor's schedules or statement of affairs or false statement by the debtor at an examination during the proceedings. *In re Semel*, 479 F.2d 1269 (3d Cir.) *cert. denied*, 415 U.S. 931, 94 S.Ct. 1442, 39 L.Ed.2d 489; *Matter of New York Fluorescent Light Co., Inc.*, 44 F.Supp. 54 (E.D.N.Y. 1942); *In re Greer*, 248 F. 131 (D.C.Ky. 1918); *In re Cohen, supra.*

27 B.R. at 945.

Plaintiffs first contend that debtors committed a false oath or account by listing the claim of Robert E. Patton, Jr. on their schedule of unsecured creditors in the amount of $17,000 when, in fact, it actually was no more than $13,400. This claim originated from a promissory note executed by debtors on September 8, 1978 in the amount of $13,300. According to the face of the note, it was payable "with interest at 9% per annum after 9–8–78 until paid." While Mr. Patton himself testified that if one were to calculate the interest on $13,-300 to the date of the filing of the petition, it would approximate $17,000, plaintiffs assert that the claim is false due to an oral understanding with debtors that the note would not be payable until certain real property was sold. In other words, plaintiffs contend this claim is overstated.

This testimony directly contradicts the express terms of the note in question and,

in the opinion of the Court, was totally incredible. Thus, plaintiffs have failed to prove that the statement made was false. In addition, there was no evidence submitted to show that the debtors knew the claim to be false or made the statement with intent to defraud.

 Plaintiffs also contend that debtors listed among their assets a gold band ring with a market value of $2,000.00 when it actually should have been listed as a gold band ring with a diamond and should be valued at $4,000.00. As with the previous allegation of false oath or account, however, no evidence was submitted to show the falsity of the statement or that the debtors knew the statement to be false.

Plaintiffs also assert that debtors submitted a false claim by listing Robert and Judy Rankin on their schedule of unsecured creditors for a disputed claim in the amount of $15,000. The evidence presented in plaintiffs' case, however, showed that the claim arose out of certain defective windows manufactured by the Pella Window Company and installed in a house built by Jerry L. Hooper, the debtor, and sold to the Rankins. Although the Rankins testified at trial and insisted that they had no such claim against the debtors, cross-examination of the Rankins revealed that they had contacted Mr. Hooper about the window problem, that Mr. Hooper had worked with the Rankins to solve the window problem, but that the window problem was never solved until after the filing of the petition and then only by the Pella Company's replacement of the windows. This ground for objection, as the others then, was not substantiated by the evidence.

The Court concludes that defendants are entitled to involuntary dismissal under Rule 41(b) on all the claims asserted by plaintiffs. As the United States Court of Appeals for the Sixth Circuit recently announced in *Hersch v. United States,* 719 F.2d 873, 876 (1983),

> As the Rule indicates, '[w]hen the defendant makes a Rule 41(b) motion to dismiss for insufficiency of the plaintiff's evidence it becomes the duty of the court

to weigh and evaluate the evidence.' *Weissinger v. United States,* 423 F.2d 795, 798 (5th Cir.1970). Moreover, in evaluating the evidence, the judge makes no special inferences in favor of the plaintiff. *Emerson Electric Co. v. Farmer,* 427 F.2d 1082, 1086 (5th Cir. 1970).

Accordingly, the Court has weighed and evaluated all the evidence submitted and concludes that plaintiffs have not met their burden of proof on any of the grounds asserted as objections to the debtors' discharge. It is therefore,

ORDERED, ADJUDGED, AND DECREED that Plaintiffs' objections to discharge be denied with prejudice.