In re Steven Ray PARSELL, Debtor.

The FAHEY BANKING CO., Plaintiff,

v.

Steven Ray PARSELL, Defendant.

Bankruptcy No. 93–31119.
Adv. No. 93–3230.

United States Bankruptcy Court,
N.D. Ohio,
Western Division.

Sept. 9, 1994.

Robert Davidson, Marion, OH, for debtor/defendant.

Martin Hughes, III, Columbus, OH, for Fahey Banking Co.

**OPINION AND ORDER DISMISSING COMPLAINT TO DENY DISCHARGE AND COMPLAINT TO EXCEPT DEBT FROM DISCHARGE AND DENYING MOTION TO DISMISS BANKRUPTCY CASE**

WALTER J. KRASNIEWSKI, Bankruptcy Judge.

This matter is before the Court on the Fahey Banking Co.'s ("Bank") complaint to deny Steven Ray Parsell ("SRP") a discharge pursuant to 11 U.S.C. § 727(a) and to except the debt owed by SRP to the Bank from

discharge under § 523(a)(2)(B). The Bank has also moved to dismiss SRP's chapter 7 case as having been filed in bad faith under § 707(a). The Court finds that the Bank's complaint against SRP under § 727 is not well taken and should be dismissed. In addition, the Court finds that the Bank's motion to dismiss SRP's bankruptcy case is not well taken and should be denied. The Court further finds that the Bank's complaint to except the debt of SRP from discharge under § 523(a)(2)(B) is not well taken and should be dismissed.

### FACTS

The debtor SRP filed a petition under chapter 7 of title 11 on April 9, 1993 (the "Petition Date"). SRP testified that he is employed as a hired hand and also operates his own farm business.

### Denial of Discharge Under § 727(a)

First, the Bank argues that, prior to the Petition Date, SRP "stripped" certain accessories from a truck which he formerly owned (the "Truck") and that he concealed these items with "the specific intent to defraud [the Bank]". SRP acknowledges that he removed a shock bumper, a running board, a bug deflector, a portable gas tank and certain hubcaps (the "Accessories") from the Truck. SRP also admits that he failed to list the Accessories on his bankruptcy schedules.

SRP testified that he removed the Accessories from his truck a number of years prior to the Bank's postpetition repossession of the Truck. SRP further testified that he was unaware that the Accessories were subject to a security interest by the Bank.

Next, the Bank argued that SRP should be denied a discharge for his postpetition "conversion" of estate assets. At the hearing, SRP testified that he had failed to turnover federal and state tax refunds in the approximate amount of $2,400.00 (the "Refunds"), the proceeds from the sale of a wheat crop (the "Wheat") and four cows (the "Cows") to the trustee in his bankruptcy case ("Trustee"). All of these assets were listed on SRP's bankruptcy schedules.

SRP testified that he was unaware of his obligation to turnover the Refunds, the Wheat or the Cows to the Trustee. SRP also testified that he did not recall being advised by the Trustee that he was supposed to turnover the Refunds, the Wheat or the Cows to the Trustee.

SRP testified that the Cows are still in his possession.

According to SRP, the Refunds and the proceeds from the sale of the Wheat were utilized to pay a number of his creditors. The Bank did not controvert this testimony.

The Bank also argued that SRP should be denied a discharge based upon his making of a false oath or account in failing to list certain assets on his bankruptcy schedules.

SRP acknowledges that he failed to list certain assets on his bankruptcy schedules. SRP testified that he failed to list "a couple" guns (the "Guns") which he owned on the Petition Date. Furthermore, as noted above, SRP testified that he did not list the Accessories on his bankruptcy schedules.

The Bank further argued that SRP made a false oath in failing to schedule a purported interest in a mobile home (the "Mobile Home") upon his bankruptcy schedules. SRP's father Richard L. Parsell ("Richard") testified that SRP was renting the Mobile Home from his mother.

The Bank also argued that SRP's failure to list certain payments to creditors during the year prior to the Petition Date on his statement of affairs represented a false oath.

SRP acknowledged that he failed to disclose a number of payments made to his father Richard, an insider, during the year prior to the Petition Date (the "Insider Payments"). The Insider Payments approximated $10,000.00. Richard's testimony also indicated that SRP failed to disclose certain rental payments which SRP made to his mother in the amount of $125.00 per month.

SRP testified that he did not understand the question posed on his statement of financial affairs with respect to payments to "insiders" within one year of the filing of his bankruptcy petition.

SRP stated that he did not consider the Insider Payments to be for the benefit of his

father in light of the fact that his father remitted the amounts that he received from SRP to the Bank and other creditors. SRP further testified that he was not aware that payments to creditors on debts for which his father Richard was jointly liable indirectly benefited Richard.

In addition, the Bank argued that SRP should be denied a discharge for his alleged failure to explain satisfactorily a loss of assets to meet his liabilities. The only evidence adduced by the Bank in support of this argument was the fact that the assets and liabilities listed on a financial statement provided to the Bank prior to the Petition Date differed from the values for assets and liabilities listed on SRP's bankruptcy schedules.

## "Bad Faith" Under § 707(a)

The Bank also argued that SRP's chapter 7 case should be dismissed because SRP paid a number of his prepetition creditors after the filing of his petition, while SRP's debt owed to the Bank remains unpaid.

As previously noted, SRP repaid a number of his prepetition creditors with the Tax Refund and the proceeds from the Wheat. Additionally, SRP testified that he used his postpetition wages and a revolving line of credit in order to make postpetition payments on certain prepetition obligations.

SRP testified that he felt compelled to make payments on a number of his prepetition obligations. First, SRP testified that he feared he would lose his job as a hired hand with his employer, Paul Loyer, if he did not repay his prepetition obligation to Loyer. Second, SRP testified that he feared he would be unable to obtain credit in the future from suppliers for his farm business if he did not satisfy his prepetition obligations to these suppliers.

## Dischargeability Under § 523(a)(2)(B)

In support of its complaint to except certain debts of SRP from discharge, the Bank provided the testimony of Thomas Manley, a vice-president and lending officer of the Bank.

At the time that SRP incurred these debts to the Bank, his father Richard was a loan officer and a member of the Bank's loan committee.

Manley testified that the Bank extended a loan in the amount of $25,000.00 to SRP on May 11, 1988 (the "First Loan"). According to Manley, the Bank extended the First Loan to SRP in reliance upon a financial statement submitted by SRP to the Bank on May 10, 1988 (the "First Financial Statement").

Manley further testified that the Bank extended a loan to SRP in the amount of $75,000.00 on May 15, 1989 (the "Second Loan"). The Second Loan was secured by collateral which included 13 acres of real property, 2 vehicles and certain farm machinery. SRP surrendered this collateral to the Bank subsequent to filing his bankruptcy petition.

Manley testified that the Bank extended the Second Loan to SRP in reliance upon a financial statement submitted by SRP to the Bank on January 30, 1989 (the "Second Financial Statement").

Manley testified that he believed both the First Financial Statement and the Second Financial Statement were misstated because such financial statements failed to reflect a debt owed by SRP to Richard (the "Family Loan").

Manley, a member of the Bank's loan committee, acknowledged that he was aware of the Family Loan prior to the loan committee meeting at which the First Loan was approved. Manley further testified that the Bank "relied a lot" upon the representations of SRP's father Richard in deciding to extend the First Loan and the Second Loan to SRP. According to Manley, Richard informed Manley that he would repay the debts owed by SRP to the Bank if SRP was unable to repay these debts.

As further support for the Bank's complaint to except the Second Loan from discharge, Manley testified that the terms of the Second Loan which were entered on the Bank's computer system by SRP's father Richard were materially different than the loan terms approved for the Second Loan by the loan committee. Manley testified that, although the Second Loan was approved by the loan committee based upon terms which

required the periodic repayment of both principal and interest, the repayment terms for the Second Loan which were entered into the Bank's computer system indicated that SRP was only responsible for periodic interest payments on the Second Loan.

## *DISCUSSION*
### BURDEN OF PROOF

■ The Bank bears the burden of proof by the preponderance of the evidence on its complaint to deny SRP a discharge, on its motion to dismiss SRP's bankruptcy case and on its complaint to except the debt of SRP from discharge. *See Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (plaintiff bears burden of proof on complaint to except debt from discharge by the preponderance of the evidence); *Adams v. Barclays/American Business Credit, Inc. (In re Adams)*, 31 F.3d 389, 391–92 (6th Cir.1994) ("holding that the exceptions to dischargeability under Section 727 ... require proof by a preponderance of the evidence").

### DENIAL OF DISCHARGE UNDER § 727(a)

Succinctly stated, although the Bank has made serious allegations of misconduct on the part of SRP warranting denial of a discharge, the evidence adduced at the hearing on this matter does not support such allegations.

#### Denial of Discharge Under § 727(a)(2)

A debtor will be denied a discharge under § 727(a)(2) where:

the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under [title 11], has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition; or

(B) property of the estate, after the date of the filing of the petition[.]

■ The intent to defraud may be inferred from the facts presented in an action under § 727(a)(2)(A). *National City Bank, Marion v. McNamara (In re McNamara)*, 89 B.R. 648, 651 (Bankr.N.D.Ohio 1988). However, contrary to the Bank's assertions at the hearing, the cases interpreting § 727(a)(2) have noted that an intent to prefer creditors cannot be equated with the intent to hinder, delay or defraud creditors. *Douglas County Bank v. Fine (In re Fine)*, 89 B.R. 167, 176 (Bankr.D.Kan.1988) (citation omitted); *Pohl Construction Co. v. Waddle (In re Waddle)*, 29 B.R. 100, 103 (Bankr. W.D.Ky.1983).

■ First, the Bank argues that SRP "stripped" the Accessories from the Truck prior to the Petition Date with "the specific intent to defraud [the Bank]". The Court disagrees. The fact that SRP removed the Accessories from the Truck a number of years prior to the Bank's postpetition repossession of the Truck belies an intent to defraud the Bank. Further, SRP's testimony has convinced the Court that he did not possess the intent to defraud the Bank when he removed the Accessories, items which are apparently of negligible value, from the Truck. Significantly, SRP's testimony indicated that he was unaware of the Bank's security interest in the Accessories at the time that he removed the Accessories from the Truck.

■ Second, the Bank argues that SRP should be denied a discharge for his postpetition "conversion" of estate assets. In view of the fact that the Bank has not sustained its burden of proving that SRP acted with the "intent to hinder, delay, or defraud a creditor or an officer of the estate", this argument must be rejected.

The Court credits SRP's testimony that he was unaware of his duty to turnover the Refunds, the Wheat and the Cows to the Trustee, and that he utilized the Refunds and the proceeds from the sale of the Wheat to make payments to certain prepetition creditors. Therefore, the Court finds that SRP should not be denied a discharge under § 727(a)(2)(B).

**Denial of Discharge Under § 727(a)(4)**

A debtor will be denied a discharge under § 727(a)(4) where:

the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account[.]

Thus, the Court must decide whether SRP:

1. knowingly and fraudulently made a false oath,

2. relating to a material fact.

*In re McNamara*, 89 B.R. at 654 (citations omitted).

■■■ Initially, the Court finds that SRP's omission of the Guns and the Accessories from his bankruptcy schedules was material because these items "b[ore] a relationship to [SRP's] ... estate, [and] concern[ed] the discovery of assets". *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 618 (11th Cir.1984) (citations omitted). Although the dollar value of these items does not appear to have been substantial in amount, "[c]reditors are entitled to judge for themselves what will benefit, and what will prejudice, them". *In re Chalik*, 748 F.2d at 618 (citations omitted). Similarly, the Court finds that SRP's failure to list prepetition payments to creditors including the Insider Payments and payments to his mother for the rental of the Mobile Home were material.

■■■ Notwithstanding the materiality of the misstatements in SRP's bankruptcy schedules and statement of affairs, the Court finds that SRP should not be denied a discharge under § 727(a)(4)(A) because such misstatements were neither knowing nor fraudulent.

■■■ A bankruptcy court may infer an intent to deceive "from the facts and attendant circumstances" presented to the court. *In re McNamara*, 89 B.R. at 654 (citing *Shuholz v. Zahneis (In re Zahneis)*, 75 B.R. 201, 203 (Bankr.S.D.Ohio 1987)); *see also Job v. Calder (In re Calder)*, 907 F.2d 953 (10th Cir. 1990) (inferring fraudulent intent from debtor/attorney's omissions from bankruptcy schedules of ownership interest in mineral rights, two bank accounts and a partnership interest). However, the facts presented in this adversary proceeding simply do not support a finding that SRP "knowingly and fraudulently" made a false oath. *See Bank of Miami v. Espino (In re Espino)*, 806 F.2d 1001, 1002 (11th Cir.1986) (omission of debtors' contingent obligation from bankruptcy schedules did not warrant denial of discharge absent facts indicating that debtors acted with the intent to defraud); *North Community Bank v. Boumenot*, 106 B.R. 149, 153 (N.D.Ill.1989) (discharge would not be denied under § 727(a)(4)(A) where debtor failed to list interest in land trust on bankruptcy schedules where such failure resulted from factors which included debtor's inattentiveness to detail); *see also Commerce Bank & Trust Co. v. Burgess (In re Burgess)*, 955 F.2d 134, 137–38 n. 4 (1st Cir.1992) (noting that material misstatements, absent fraudulent intent, do not warrant denial of a discharge under § 727(a)(4)(A)); *Patton v. Hooper (In re Hooper)*, 39 B.R. 324 (Bankr. N.D.Ohio 1984) (denial of discharge for false oath not warranted based on discrepancies in value of a ring listed on debtor's schedules where creditor failed to prove the falsity of debtor's scheduled value for ring and failed to prove that debtor made statement with the knowledge that it was false); *c.f. Middlefield Banking Co. v. Kassoff (In re Kassoff)*, 146 B.R. 194, 200 (Bankr.N.D.Ohio 1992) (discrepancies between debtor's testimony at § 341 meeting and testimony at trial with regard to disposition of proceeds from sale of collateral did not warrant denial of a discharge under § 727(a)(4)); *United States v. Sumpter (In re Sumpter)*, 136 B.R. 690 (Bankr.E.D.Mich.1991) (debtor's misrepresentation that she had read bankruptcy schedules and statement of financial affairs before signing them did not provide basis for denying debtor's discharge under § 727(a)(4)), *aff'd*, 170 B.R. 908 (E.D.Mich. 1994); *Soukup v. Ionna (In re Ionna)*, 74 B.R. 255 (Bankr.S.D.Ohio 1987) (debtor would not be denied a discharge under § 727(a)(4)(A) based upon inconsistencies between testimony at trial and prior statements). Rather, the Court credits SRP's testimony that he inadvertently failed to schedule assets including the Guns and the Accessories.

Nor can the Court conclude that SRP "knowingly and fraudulently" failed to list certain payments to creditors, including the Insider Payments and the rental payments on the mobile home, on his statement of financial affairs. Clearly, SRP failed to list certain payments to insiders on his bankruptcy schedules. However, the Court finds it equally apparent that SRP did not understand the meaning of the term "insider" and that his failure to list certain payments to "insiders" within the year prior to his bankruptcy was the product of inadvertence.

**Denial of a Discharge Under § 727(a)(5)**

A debtor will be denied a discharge under § 727(a)(5) where:

> the debtor has failed to explain satisfactorily ... any loss of assets or deficiency of assets to meet the debtor's liabilities[.]

■ The mere fact that the values of assets and liabilities listed on financial statements submitted by SRP to the Bank prior to the Petition Date differ from the assets and liabilities listed on SRP's bankruptcy schedules does not support a finding that there has been a loss of assets or a deficiency of assets to meet SRP's liabilities. *C.f. Michigan Nat'l Bank v. Newman (In re Newman),* 7 F.3d 234 (unpublished) (6th Cir. 1993).

**Denial of a Discharge Under § 727(a)(6)**

A debtor will be denied a discharge under § 727(a)(6) where:

> the debtor has refused, in the case—
> (A) to obey any lawful order of the court, other than an order to respond to a material question or to testify[.]

■ Although the Court can in no way condone SRP's failure to provide the records and deposition testimony sought by the Bank in a more expeditious manner, SRP's delay in providing the Bank with these items does not represent grounds for denial of a discharge under § 727(a)(6). *See In re Burgess,* 955 F.2d at 138 (discharge would not be denied under § 727(a)(6) for debtor's untimely filing of bankruptcy schedules where schedules, although late, were filed with the court and "there was no evidence either of harm to creditors or contumacy").

**DISMISSAL UNDER § 707(a)**

■ Lastly, the Court cannot concur with the Bank that SRP's bankruptcy case should be dismissed merely because he chose to repay certain prepetition obligations. The facts presented to the Court indicate that SRP paid certain prepetition creditors subsequent to the Petition Date based upon his belief that failure to pay such debts could result in the loss of his job or the loss of credit to finance his farm business. Such payments cannot be viewed as evidence of bad faith.

**DISCHARGEABILITY UNDER § 523(a)(2)(B)**

■ The Bank's complaint to except the First Loan and the Second Loan from discharge is not well taken.

Section 523(a)(2)(B) requires that a debt be excepted from discharge where such debt has been procured by the:

> use of a statement in writing—
> (i) that is materially false;
> (ii) respecting the debtor's ... financial condition;
> (iii) on which the creditor to whom the debtor is liable for such money, property, services or credit reasonably relied; and
> (iv) that the debtor caused to be made or published with the intent to deceive[.]

Most importantly, the Bank has not convinced the Court that SRP intended to deceive the Bank or that SRP acted with the degree of gross recklessness as to the truth from which a bankruptcy court will infer an intent to deceive.

In addition, Manley's testimony that the Bank relied upon the First Financial Statement and the Second Financial Statement in extending the First Loan and the Second Loan to SRP was incredible. On the contrary, according to Manley's testimony, the Bank relied upon assurances of repayment made by Richard in extending the First Loan and the Second Loan.

Moreover, accepting arguendo the Bank's argument that it relied upon the financial statements submitted by SRP, Manley's knowledge of the Family Loan belies reasonable reliance. Indeed, the Court has serious questions as to whether the Bank has advanced this action under § 523(a)(2)(B) in bad faith.

The Bank's argument that the Second Loan should be excepted from discharge based upon Richard's actions can only be characterized as frivolous. *Compare Upadhyay v. Burse (In re Burse),* 120 B.R. 833 (Bankr.E.D.Va.1990) (imposing sanctions pursuant to Fed.R.Bankr.P. 9011 against pro se plaintiff for prosecuting frivolous adversary complaint under § 523(a)(2)). This argument is not warranted by existing law under § 523(a)(2)(B). Nor does this represent a good faith argument for the extension, modification, or reversal of existing law under § 523(a)(2)(B).

According to Manley, Richard entered the Second Loan on the Bank's computer system as requiring payments of interest only, when the Bank's loan committee had in fact approved the Second Loan based upon the condition that SRP make periodic payments of both interest and principal. Surprisingly, the Bank has neither alleged nor provided any evidence that SRP procured the Second Loan by perpetrating a fraud on the Bank. The Bankruptcy Code simply does not enable a creditor to visit the sins of a debtor's father upon the debtor.

In light of the foregoing, it is therefore

ORDERED that the Fahey Banking Company's complaint to deny Steven Ray Parsell a discharge be, and it hereby is, dismissed. It is further

ORDERED that the Fahey Banking Company's motion to dismiss Steven Ray Parsell's bankruptcy case pursuant to § 707(a) be, and it hereby is, denied. It is further

ORDERED that the Fahey Banking Company's complaint to except the debt of Steven Ray Parsell from discharge be, and it hereby is, dismissed.